IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:19-CV-362

| | |
|---|---|
| **PEERLESS INSURANCE COMPANY AND OHIO SECURITY INSURANCE COMPANY,** )<br>)<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>**INNOVATIVE TEXTILES, INC. AND CARHARTT, INC.,** )<br>)<br>)<br>Defendants. )<br>) | **COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiffs, Peerless Insurance Company ("Peerless") and Ohio Security Insurance Company ("Ohio Security"), hereby complain of the Defendants, Innovative Textiles, Inc. ("ITI") and Carhartt, Inc. ("Carhartt"), by alleging as follows:

**Preliminary Statement**

1. In this action, Peerless and Ohio Security seek declaratory rulings, pursuant to 28 U.S.C. § 2201, *et seq.,* and Rule 57 of the Federal Rules of Civil Procedure, regarding their duties and obligations, if any, owed to ITI under certain insurance policies Peerless and Ohio Security issued to ITI in relation to claims asserted against ITI by Carhartt in a product defect lawsuit currently pending in the United States District Court for the Eastern District of Michigan, entitled *Carhartt, Inc. v. Innovative Textiles, Inc. v. Gentry Mills, Inc.,* Civil Action No. 2:17-cv-13604-JEL-RSW ("Underlying Lawsuit").

2. More specifically, Carhartt alleges in the Underlying Lawsuit that ITI is liable to it under various causes of action for damages caused by ITI's supply of fabric to

Carhartt for the manufacture of flame resistant sweatshirts, which fabric allegedly failed to meet the flame-resistant specifications for such garments thereby rendering them unmerchantable for their intended purpose.

3. Based upon the facts alleged in the pleadings that frame the Underlying Lawsuit, Peerless and Ohio Security contend that none of the primary or excess insurance policies they issued to ITI afford any insurance coverage for the claims and damages asserted against it by Carhartt in the Underlying Lawsuit, and, thus, Peerless and Ohio Security no longer owe ITI any defense in the Underlying Lawsuit, nor will they owe any duty to indemnify ITI against any judgment entered against it in the Underlying Lawsuit.

## Parties, Jurisdiction And Venue

4. Peerless is a New Hampshire corporation that now and at all times alleged herein: (i) maintained its principal place of business in Boston, Massachusetts; (ii) has been licensed and authorized to transact insurance business in North Carolina; and (iii) has defended ITI in the Underlying Lawsuit pursuant to a full reservation of its rights under the terms and conditions of a series of business-owners coverage and commercial umbrella insurance policies that it issued to ITI as the named insured for the policy periods of May, 24, 2012 through October 13, 2015, which timeframe also partially encompasses the time period when ITI allegedly supplied the deficient fabric to Carhartt from which the sweatshirts at issue in the Underlying Lawsuit were manufactured.

5. Ohio Security is also a New Hampshire corporation that now and at all times alleged herein: (i) maintained its principal place of business in Boston, Massachusetts; (ii)

has been licensed and authorized to transact insurance business in North Carolina; and (iii) has defended ITI in the Underlying Lawsuit pursuant to a full reservation of its rights under the terms and conditions of a business-owners coverage policy and a commercial umbrella policy that it issued to ITI as the named insured for the policy period of October 13, 2015 through October 13, 2016, which timeframe also partially encompasses the time period when ITI allegedly supplied the deficient fabric to Carhartt from which the sweatshirts at issue in the Underlying Lawsuit were manufactured.

6. Upon information and belief, ITI is North Carolina corporation that at all times alleged herein: (i) maintained its principal place of business in High Point, Guilford County, North Carolina; (ii) is engaged in the manufacture and/or distribution of fabrics and other textiles at its facilities in North Carolina from where it sells and ships such fabrics to apparel manufacturers like Carhartt; and (iii) is the named insured on the subject insurance policies at issue specifically described in Paragraphs 13 and 14.

7. Upon information and belief, Carhartt is a Michigan corporation that at all times alleged herein: (i) maintained its principal place of business in Dearborn, Wayne County, Michigan; (ii) manufactured apparel and other products that it advertised, sold, and shipped globally, both from retail stores and from its website, including from stores, and to customers, in North Carolina; and (iii) is the plaintiff in the Underlying Lawsuit through which it seeks damages against ITI for its alleged supply of deficient fabric to Carhartt from which the sweatshirts at issue in the Underlying Lawsuit were manufactured.

8. This Court has subject matter jurisdiction over Peerless' and Ohio Security's claims for declaratory relief in this action under 28 U.S.C. § 1332, since there is complete diversity of citizenship among the parties and the alleged amount in controversy under the claims asserted by Carhartt against ITI in the Underlying Action exceed the sum of $75,000.00, exclusive of interest and costs.

9. This Court has personal jurisdiction over the parties to this action under N.C. Gen. Stat. § 1-75.4, since: (i) each party is engaged in substantial commercial activity within North Carolina; (ii) the subject matter of the Underlying Lawsuit involves, upon information and belief, agreements to manufacture and/or ship and distribute goods from North Carolina; and (iii) the subject insurance policies at issue in this action were delivered to ITI at its principal place of business in North Carolina.

10. This Court is also the proper division and venue for this action pursuant to 28 U.S.C. § 1391, since, upon information and belief: (1) ITI is domiciled within the Court's geographic boundary; and (2) Carhartt, Peerless, and Ohio Security all conduct business within the Court's geographic boundary, including, but not limited to, the issuance of the relevant insurance policies to ITI.

11. North Carolina law controls this Court's review and construction of the insurance policies at issue under N.C. Gen. Stat. § 58-3-1, since the policies were delivered to ITI at its principal place of business in North Carolina and insure property and interests located within the state.

12. Finally, both Peerless and Ohio Security have satisfied all applicable conditions precedent necessary for the maintenance of this action, including satisfaction of the applicable statutes of limitation and repose.

**Insurance Policies and Policy Periods**

13. This action is first premised upon the availability of insurance coverage, if any, among a series of five primary business-owners policies, each including commercial general liability ("CGL") coverage, issued by Peerless and Ohio Security to ITI for the policy years running from May 24, 2012 through October 13, 2016, denoted as Peerless Policy No. BOP 8036850 for the policy years of May 24, 2012 until October 13, 2015, and Ohio Security Policy No. BZS 56954915 for the policy year of October 13, 2015 through October 13, 2016, and each, subject to its terms, conditions, limitations, and exclusions, having the following limits of insurance:

> (a) Commercial General Liability ("CGL") insurance with: (i) an "each occurrence" limit of $2,000,000; (ii) a "general aggregate" limit of $ 4,000,000; and (iii) a products completed operation aggregate" limit of $4,000,000.

The terms and provisions of each primary policy are substantively identical, and, thus, the series of policies will be hereafter referred to, collectively, as the "Subject Primary Policies." An exemplar copy of the Peerless business-owners policy issued to ITI is attached as Exhibit 1[1]. A copy of the Ohio Security business-owners policy is attached as Exhibit 2.

---

[1] Peerless and Ohio Security are filing only exemplar copies of the Peerless business-owner and commercial umbrella policies issued to ITI in the interest of brevity. Peerless and Ohio Security will gladly file the additional policies at the Court's request and will produce all policies during discovery in this action.

14. This action is secondarily premised upon the availability of insurance coverage, if any, among a series of five commercial umbrella policies issued by Peerless and Ohio Security to ITI for the policy years running from May 24, 2012 through October 13, 2016, denoted as Peerless Policy No. CU 8037350, for the policy years of May 24, 2012 until October 13, 2015, and Ohio Security Policy No. USO 56954915, for the policy year of October 13, 2015 through October 13, 2016, each of which, subject to its terms, conditions, limitations, and exclusions, provides $3,000,000.00 in excess insurance coverage. The terms and provisions of each umbrella policy are substantively identical, and, thus, the series of policies will be hereafter referred to, collectively, as the "Subject Excess Policies." An exemplar copy of the Peerless commercial umbrella policy issued to ITI is attached as Exhibit 3. A copy of the Ohio Security commercial umbrella policy is attached as Exhibit 4.

15. The Subject Primary Policies and Subject Excess Policies are, collectively, referred to herein as the "Subject Insurance Policies."

**History and Nature of Underlying Lawsuit**

16. As stated above, Peerless and Ohio Security are prosecuting this action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Rule 57 of the Federal Rules of Civil Procedure, and North Carolina law to seek declaratory rulings on whether any of the Subject Insurance Policies afford any coverage to ITI for the product defect claims asserted against it by Carhartt in the Underlying Lawsuit based on the facts alleged in the pleadings to date.

17. Carhartt's product defect claims against ITI in the Underlying Lawsuit, against which Peerless and Ohio Security have, to date, provided ITI a defense, all stem from ITI's alleged supply of defective fabric to Carhartt for the manufacture of flame-resistant sweatshirts that failed to satisfy Carhartt's specifications for flame resistance during an alleged twenty-six month span from approximately February of 2014 through April of 2016. A copy of the complaint filed by Carhartt to commence the Underlying Action is attached as Exhibit 5.

18. The complaint filed by Carhartt alleges the following factual basis for the dispute at issue in the Underlying Lawsuit:

   a) ITI allegedly marketed certain fabrics it produced as inherently flame-resistant, as defined by two National Fire Protection Association standards (2112 and 70E), due to an industry standard "modacrylic" fiber, known as Protex-C, ITI used to knit or weave the fabric, *see* Carhartt Complaint, Exhibit 5, at ¶¶ 16-20 and 32;

   b) Carhartt began purchasing flame-resistant fabric from ITI based on ITI's representations about the fabric's inherent flame resistance and ITI's agreement to provide Carhartt with fabrics that complied with Carhartt's "Flammability Specifications," including the 2 second after-flame limit established by industry standard, ATSM D6413, *see id.*; *see also* ¶¶ 21;

   c) ITI also agreed to comply with Carhartt's standard terms and provisions in Carhartt's purchase order that afforded Carhartt certain inspection, approval and cancellation rights should any fabric be found non-compliant, *see id.* at ¶¶ 25-31;

   d) Based on ITI's alleged contractual agreement to comply with Carhartt's terms, provisions and specifications for flame resistant fabric, Carhartt purchased seven different flame-resistant fabrics from ITI to manufacture its flame-resistant line of sweatshirts clothing, *see id.* at ¶ 22;

   e) ITI switched to another fiber, known as F12 manufactured by Formosa Chemicals and Fibre Corp., to produce its flame-resistant fabrics in late 2013

or early 2014 without disclosing the change of fiber to Carhartt, *see id*. at ¶ 34;

f) The ITI fabric utilizing the F12 fiber did not comply with Carhartt's flame resistance specifications, primarily the 2 second after-flame limit, a fact that Carhartt did not discover until June of 2016 while performing internal testing on finished garments manufactured from the ITI fabric, *see id*. at 37, 41;

g) When confronted with Carhartt's internal test results, ITI acknowledged that it switched from the Protex-C to F12 fiber in February of 2014 to knit or weave the flame-resistant fabric it supplied to Carhartt, *see id*. at ¶ 38;

h) In April of 2016, ITI returned to Protex-C fiber for the knitting or weaving of its flame-resistant fabric supplied to Carhartt, *see id*. at ¶ 39;

i) In August of 2016, Carhartt recalled nine styles of flame resistant sweatshirts it manufactured from late 2013 and early 2014 through the recall date based on its concern that ITI fabric from which they were made did not comply with Carhartt's specifications for flame resistant garments, *see id*. at ¶ 41; and

j) Carhartt finally contends it has incurred approximately $13M in damages as a result of ITI's supply of non-conforming, flame resistant fabric, which sum includes recall expenses, customer refunds and diminution in value of unsold finished goods and fabric stock, *see id*. at ¶¶ 44-46.

19. Upon further information and belief, the damages Carhartt seeks in the Underlying Lawsuit are limited to: (a) the loss of value of the unused rolls of allegedly defective ITI fabric remaining in Carhartt's inventory; (b) loss of value of the finished sweatshirts remaining in Carhartt's inventory that can't be sold as flame-resistant garments under Carhartt's specification; and (c) the loss of value of the finished sweatshirts Carhartt recalled from marketplace and consumers due their suspected failure to satisfy Carhartt's flame-resistant specification.

20. Upon further information and belief, all causes of action asserted by Carhartt against ITI in the Underlying Lawsuit to recover damages allegedly caused by the deficient fabric stem from ITI's failure to supply fabric that satisfied Carhartt's contractual specifications.

21. Upon further information and belief, Carhartt alleges that the deficient flame resistance in the ITI fabric at issue in the Underlying Lawsuit "arose from the decision by ITI to change fibers from Protex-C, which was widely accepted in the industry, to F12, which does not appear to possess the same inherent flame-resistant properties as Protex-C, without first testing the F12 fiber to ensure that it flame resistance matched the Protex-C fiber." *See* Carhartt Complaint, Exhibit 5, at ¶¶ 69-70.

22. To date Peerless and Ohio Security have provided ITI a full defense in the Underlying Lawsuit in accordance with the terms and conditions of the Subject Primary Policies under a full reservation of their rights under the Subject Insurance Policies to seek a legal determination as to which, if any, of the Subject Insurance Policies afford coverage to ITI for the claims asserted against it by Carhartt in the Underlying Lawsuit.

**First Cause of Action**
**(Declaratory Judgment)**

23. Peerless and Ohio Security incorporate the allegations in Paragraphs 1 through 22 by reference as if fully re-alleged herein.

24. Peerless and Ohio Security contend that the following issues enumerated in Paragraph 25 present actual, concrete, and justiciable controversies between them, ITI and Carhartt regarding insurance coverage, if any, under the Subject Insurance Policies for

Carhartt's claims against ITI that empower this Court to decide and determine these issues pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Rule 57 of the Federal Rules of Civil Procedure and North Carolina law, and to enter final judgment construing and clarifying the parties' rights, duties, and obligations under the Subject Insurance Policies.

25. Specifically, Peerless and Ohio Security seek declaratory rulings from this Court on the following issues:

    a) whether, under North Carolina law, ITI's supply of allegedly deficient fabric to Carhartt during the February, 2014, through April, 2016, time period constitutes "property damage" within any policy period caused by an "occurrence" sufficient to potentially satisfy the insuring agreement within the commercial general liability ("CGL") coverage of the Subject Primary Policies;

    b) if the insuring agreement within the CGL coverage is potentially satisfied under any of the Subject Primary Policies, then whether such coverage is otherwise excluded, in whole or in part, by the following exclusions:

        (1) the "intended or expected injury" exclusion;

        (2) the "damage to your product" exclusion;

        (3) the "contractual liability" exclusion;

        (4) the "damage to impaired property or property not physically injured" exclusion; and/or

        (5) the "recall of products, work or impaired property" ("sistership") exclusion.

    c) if the insuring agreement within the CGL coverage is not satisfied under any of the Subject Primary Policies, or if satisfied, then ultimately excluded under the exclusions identified in the preceding paragraph, then whether, under North Carolina law, Peerless and Ohio Security owe any further duty to defend and indemnify ITI against Carhartt's claims in the Underlying

Lawsuit under either the Subject Primary Policies or Subject Excess Policies; and

    d)    if there is no CGL coverage under the Subject Insurance Policies for Carhartt's claims against ITI, then whether ITI is responsible under the terms and provisions of the Subject Insurance Policies for reimbursing Peerless and/or Ohio Security for all defense costs and expenses paid by each company to defend ITI in the Underlying Lawsuit.

26.    Based on the facts alleged in the Underlying Lawsuit, Peerless and Ohio Security contend they are entitled to declaratory rulings from this Court in their favor on each of the issues outlined above in Paragraph 25 and, based on these rulings, an ultimate declaratory judgment from this Court that: (a) the Subject Primary Policies and Subject Excess Policies afford ITI no coverage for the claims asserted against it by Carhartt in the Underlying Lawsuit; (b) as a result, Peerless and Ohio Security have no further duty to defend or indemnify ITI under the Subject Insurance Policies against the claims asserted against ITI by Carhartt in the Underlying Lawsuit; and (c) ITI must reimburse Peerless and Ohio Security for all costs and expenses paid by them to defend ITI in the Underlying Lawsuit.

**WHEREFORE**, Peerless and Ohio Security hereby respectfully request that this Court enter judgment that grants their requests for declaratory relief under their First Cause of Action by finding and declaring:

1.    The Subject Primary Policies and Subject Excess Policies afford no coverage to ITI for the product defect claims asserted against it by Carhartt in the Underlying Lawsuit based on the facts alleged in in the Underlying Lawsuit;

2.    Peerless and Ohio Security have no further duty to defend ITI against the product defect claims asserted against it by Carhartt in the Underlying Lawsuit due to the lack of coverage for said claims under the Subject Primary

Policies and Subject Excess Policies based on the facts alleged in the pleadings;

3. Peerless and Ohio Security have no potential duty to indemnify ITI against any judgment entered on the product defect claims asserted against it by Carhartt in the Underlying Lawsuit due to the lack of coverage for said claims under the Subject Primary Polices and Subject Excess Policies based on the facts alleged in the pleadings;

4. ITI is obligated to reimburse Peerless and Ohio Security for the fees and costs they have incurred in defending ITI in the Underlying Lawsuit to date;

5. Peerless and Ohio Security further request an award of the costs and attorney fees they incur in prosecuting this declaratory judgment action if allowed under North Carolina law; and

6. Peerless and Ohio Security finally request such other and further relief as the Court deems just and proper.

Respectfully filed, this the 2nd day of April, 2019.

    WALL TEMPLETON & HALDRUP, P.A.

    /s/ J. Mark Langdon
    J. Mark Langdon (NCSB #19539)
    Keith E. Coltrain (NCSB # 21988)
    1001 Wade Avenue, Suite 423
    Raleigh, NC 27605
    Tel.: (919) 865-9500
    Fax: (919) 865-9501
    Email: Mark.Langdon@walltempleton.com
    Keith.Coltrain@walltempleton.com
    *Local Rule 83.1 Counsel for Peerless Insurance Company and Ohio Security Insurance Company*

    and

Page **12** of 13

Case 1:19-cv-00362-LCB-JLW   Document 1   Filed 04/02/19   Page 12 of 13

WALL TEMPLETON & HALDRUP, P.A.

/s/ Morgan S. Templeton
Morgan S. Templeton (SCSB #15456)
145 King Street, Suite 300
Charleston, SC 29402
Tel.: (843) 329-9500
Fax: (843) 329-9501
Email: morgan.templeton@walltempleton.com
*Co-Counsel for Peerless Insurance Company
and Ohio Security Insurance Company*